We'll go to the last case for this morning, but it's no longer morning. And that is C.A.C.II.  I'm Christina Harvey, and I represent appellants C.A.C., the second, C.C., and P.C. And, Your Honors, I'm requesting four minutes for rebuttal. That's granted. Thank you. This matter is not your typical Federal Tort Claims Act case. This is a child abuse case. You're asked to decide whether or not the complaint must be reinstated because the government failed to report child abuse and take any other actions that could have prevented the plaintiff in this matter, an eight-year-old boy, from being sexually molested by a colonel of the United States Air Force. Does everybody agree that licking the toes is a sexual abuse? I mean, I've never heard of it. Yes, because the colonel had admitted through the court-martial proceedings that he did this action for sexual gratification. In addition, it also has harmed the plaintiff in this matter, requiring him to seek psychological counseling as a result of it. Thank you. The government, and specifically the military, is ordinarily entrusted to protect us, but it failed with regard to the plaintiff here. The government had knowledge that Colonel Pallavoda was a sexual predator. There were three prior incidents at two prior military bases. Who would you extend liability to here? I mean, we're talking about the government amorphously. I understand that, but who specifically breached the duty that you're trying to extend? Your Honor, this matter was dismissed before there was any discovery. So one of the things that we had wanted and asked for the District Court for discovery is to identify the persons who had knowledge at the government. Through the court-martial proceeding, we learned that there were two other cases, or I'm sorry, there were three other incidents at two other bases where the government had knowledge of this, because all the matters were then consolidated into the court-martial. However, because there were not even any initial disclosures, we can't identify that person. But how I can globally explain the category of person who I think would be the negligent party is the person who, at Joint Base Fort Dix-McGuire, who was aware of the reason for the transfer and then placed the colonel into the regular ongoings at the base without taking any action to alert the authorities. And it should be noted that in this instance, the colonel has his own son. So it wasn't just my client who deserved the protection, but there were reasons to alert, under New Jersey's law, the Division of Youth and Family Services. In addition, there's other questions that, although the government placed in its brief about the federal law that applies for reporting child abuse, which is 28 U.S.C. 13031, we were not in a position to say whether or not it applied because we didn't know whether or not, with the knowledge that the government had, they had formally launched an investigation. Because in that instance, there's another reporting requirement that applies federally. If there's an investigation launched, then the appropriate social service agency is supposed to become involved. Are you relying principally on the New Jersey law? I am because that law, the way that it's drafted and applies through the Assimilated Crimes Act, is that any person with a reasonable suspicion must report the conduct. Did you raise that in the district court? The actual child abuse statute was not raised under the New Jersey law. Now, if you didn't raise it in the district court, why isn't that waived? Our cases are consistent that if you don't raise something in the district court, then we don't have jurisdiction over it. Well, the rule under the cases that we cited in our brief is that it's a discretionary ruling that the court may elect to exercise its discretion, particularly when it's a legal matter. Here, the district court judge made no factual findings. He limited his review to the complaint itself. And this is purely whether or not there's a legal claim. So this court reviews the matter de novo. And under that basis, then it can review whether or not the child abuse reporting law sets forth a duty that the government had to abide by. But we don't have... Well, in any event, we don't have to hear that as long as you have failed in light of the fact that you failed to raise that in a district court. Isn't that right? You don't have to. There's no obligation for you to consider the merits. Generally, we say that we have no jurisdiction over that in that instance. Right? We cited to you law where courts have taken jurisdiction on a purely legal matter, the Doris matter. And in addition, one of the cases where the government cites to is Pritzker v. Merrill Lynch, where although waiver was, in fact, upheld in that case, the court considered two public policy bases for its ruling. First, that there was another form. In that case, it was whether or not at the very initial stages of the matter, there was a motion to dismiss the complaint, and the court upheld the waiver because the plaintiff had another form, which was the arbitration form. Well, why should we take a case in which it wasn't important enough for you to have raised it in the district court? Why should we do that? I mean, because ordinarily we ask people to take things up in the district court so we can hear what the district judge says about it, the wisdom of the district. In this particular instance, we did raise that there was a state law claim, and we said that because there was a foreseeable plaintiff, then there should be liability. The only problem was we didn't cite the child abuse reporting statute. Not only didn't you cite it, you didn't use that as one of the bases for dismissal. I mean, it's not just a matter of, well, we said it, but we didn't cite it. It's just you didn't raise that issue. Right, because we believe that by providing that there was a state law basis, under the case law we would have at least limited discovery  Yeah, but as you say, this was a legal issue. So why wouldn't you have raised the legal issue? The discovery has nothing to do with it. It was a legal issue, and you didn't raise it. And therefore, according to our cases, that's it. We think that this, although it's a legal issue, there's also facts that go into whether or not there's a duty. Under the JS case, the New Jersey Supreme Court said that the statute doesn't set a negligence per se standard, that there are a totality of the circumstances case that has to go into it. So here, the only facts that we knew are that there were three other children at two other military bases, that the government had knowledge of this, and that the colonel was then transferred without a reporting being made. But before we get to JS, I presume that we've got to make a determination that this falls within Sheridan, and then if we get to JS, and of course that would mean that we get past the waiver issue that Judge Slobner has raised, you'd have the problem of the applicability of JS, because as I understand it, the wife in this case is no longer a party. Right? So isn't there a question about what's the breadth of JS's application? Well, our argument for JS's application is that anybody at the government who had knowledge of this would be the liable party who the reporting act would apply to. But that's not what JS says, right? I mean, JS goes through a rather detailed analysis of why in that case the wife of the subject who engaged in the nefarious activity would be in a particularly good position to have known that her husband engaged in this kind of activity with the 15-year-old and the 12-year-old. So why should we impute to JS a broader application than the Supreme Court of New Jersey did? Well, the Supreme Court said that we have to do a fact-by-fact analysis for when this ruling would play out, and then it then extended the ruling in the Frugus case. And so the case was not to have a limited holding to a spouse. And here, based upon the court marshalling, we think that discovery would show that the government officials were intimately aware that the colonel had this predilection to molest little boys. In fact, he had been a Boy Scout leader, and through those roles is how he chose his prey. And as a result of that and then the transferring, we think that that would rise to the level under JS and Frugus, because under the analysis, the Supreme Court was clear that they wanted a fact-by-fact basis. And that also goes to why we think there were underlying fact issues where we should have been able to have discovery. I will reserve the rest for my rebuttal. Thank you. Okay. May it please the Court. Benjamin Schultz on behalf of the United States. As your honors have already recognized,  given the plaintiff's dispositive waiver and their failure to raise the New Jersey statute in the court below. And we think that presents a simple way to dispose of this. We see no reason why the Court should refrain from doing so. Let me ask you. No, go ahead. Maybe a simple way of disposing of the case. But is it a just way of disposing of the case? I'm kind of concerned that here we have a situation in which the defendant is not a private litigant, but is the United States. And surely you have an interest, we all have an interest, in complete justice being accomplished. Now, it may well be that the new claim that's advanced on behalf of CAC has no merit under New Jersey law. Maybe it does, but without exploring that one way or another, we're left in the situation in which if we follow a waiver principle, we're uncertain whether perhaps the United States has behaved in an inappropriate fashion. Well, your honor, I actually have several responses to that. The first is because this is a case against the United States, I would submit that's all the more reason why this Court should be careful about waiver principles. And if you look at the way that the FTCA is set up, it's set up as a waiver of sovereign immunity, and it's set up as a waiver that has relatively strict time limits for plaintiffs to bring their claims. So, for example, a plaintiff has to file an administrative claim within two years of his claim accruing, and then after they get an administrative denial, they have only 180 days after that to come to court. So Congress has set up a scheme in which it contemplates a plaintiff moving quickly to get into court, and that protects the government and ensures that we have access to the witnesses that we might need to help us prove our case. And, indeed, if you look at some of the allegations in this case, you can see that they go back quite a ways in time, and so that might be a particular concern for the government. So when you have a situation where a plaintiff has gone to district court and then hasn't articulated the theory that they now want to rest on in the Court of Appeals, that prejudices the government because we've had to go through all these district court proceedings and the delay of then going to the Court of Appeals, and if this court were then to remand, that is not all that different than sort of like a one-year extension of the statute of limitations or a one-and-a-half-year extension. I'm not saying they're identical, but my point is only that there is prejudice to the government from delay, and given the context of a waiver of sovereign immunity, that ought to push the court more towards waiver rather than shying from it. I'm sorry. That's okay. If we can go to another point. Mr. Schultz, the district court dismissed the State claims as well. That's correct, but it dismissed them, as I understand it, without prejudice. Well, that's what I was asking you. It just dismissed them. So is it without prejudice? Your Honor, when the district court dismissed the claims, it was clear that it was declining to exercise supplemental jurisdiction over them, and I don't recall if the district court specifically said that it was without prejudice, but my understanding It didn't say, and that's what I wondered. My understanding, and I don't represent any of the individual plaintiffs, so I don't want to answer for them, but my understanding is that a dismissal under supplemental for declining to exercise supplemental jurisdiction is certainly under the case, almost certainly under the case law without prejudice, and I think the supplemental jurisdiction statute even has language to that effect. I don't have that in front of me, and I could be mistaken. Well, that's very important because then Ms. Harvey's clients can still go back to the State for a claim if it was without prejudice. That's my understanding, and, in fact, I think the supplemental jurisdiction statute even says that while the claim is pending in federal court, the statute of limitations is told for State law purposes, so we think that that's exactly right, that she would have recompense against the individual plaintiffs to whatever extent they can recover. Not against them, for them. I'm sorry. Against the private party defendants to the extent that they can state valid claims against the private parties. That's a very significant concession, and you can take that to the bank. It is. Of course, again, I don't represent the private parties, so I just want to make sure the court understands that. That's very important. But certainly that is the government's understanding is that they could proceed against the private parties. Okay. Just on the merits for a moment, talk to me about your view of the interplay between Sheridan and JS. Do we have enough to get from Sheridan to JS? And if we do get to JS, what's your view of JS? I mean, obviously your adversary has said that she thinks that the combination of JS and Frugus gets her there. Certainly, Your Honor. I think it's important to understand that as I read their opening brief, and as I thought I understood their opening brief, their claim tried to avoid the Sheridan holding by saying that the only thing that they're seeking to hold the government liable for is a tort claim of failure to report in accordance with the New Jersey statute. And if that was the claim they articulated in their opening brief, then that's clearly not a tort claim that New Jersey recognizes. Now, I thought I heard indications in the argument that perhaps they're arguing for some sort of broader claim. And it is the case that JS, in at least some circumstances, has said that a failure to make a report in accordance with the New Jersey statute can be evidence of negligence. But the actual tort that JS recognizes is a much broader one. It's about a duty to protect from harm in certain circumstances, and based on the totality of circumstances, including for things like you have to weigh policy decisions. Policy considerations is what JS says. It also says you have to take account of the relationship of the parties. And if that's the claim that the plaintiffs are bringing, then that brings them right square into both the holding of Sheridan, and this court's holding in CNA, because they're not talking about negligence that is entirely independent of the government's employment relationship. And it also squarely implicates the discretionary function exception, because now you get into all sorts of discretionary things that the government is doing. And so, for example, if you can imagine how we might defend some sort of broader negligence claim, again, even assuming that the JS duty would extend to the government, which we're not conceding. But we might defend by saying, well, we didn't report to DYFS, but we did report to the division of the Air Force that takes these investigations. Or we decided to investigate, concluded that there wasn't enough evidence. Or we decided to investigate, the investigate, you know, took some degree of time, and that eventually resulted in a court-martial. The point is that there are a lot of things that if the government had a duty, that it could have done to discharge that duty, and it would be the government's exercise of discretion in choosing which of those things it was going to do. And the problem for the plaintiffs is that they're singling out one particular way that they think the government could have chosen to discharge that duty, and they're claiming that that particular way was nondiscretionary. But if the broader duty is to just take some action to prevent the plaintiff from harm, then they're squarely implicating the discretionary function exception. I'd like to pursue, if I may, the Sheridan issue. It wasn't exactly clear to me, one way or another, it wasn't clear to me why the case is to be made that the colonel's status was not independent of, irrelevant to the question of the government's liability, in the same sense that the Sheridan cases were. I'm sorry. If you listen to where the plaintiffs are articulating why the government owed a duty here, it's clear that that duty came from the employment relationship with Palo Alto. Let's push that for a moment. To the extent that the, if you assume for the moment that the plaintiff is allowed to amend and go back and pursue this new claim, failure to report some suggestion of child abuse, I'm not clear that the government's failure to make that report would be dependent, one way or another, on the status of the colonel. And I put to you this situation. Suppose we had a couple. The wife was in the military. The husband was not, a civilian. But as to both of them, there was some reason to be of concern about sexual abuse that reputedly both had engaged in. The government moves a military person to New Jersey. The non-military spouse accompanies. Assuming the New Jersey claim to have an outside validity, is it enough? Is there a reason to distinguish between the government's obligation to report as to the military personnel but not as to the civilian spouse? Your Honor, in either case, it doesn't appear that, in your hypothetical, it doesn't appear that any negligence by the government would be entirely independent of the employment relationship because in order to trace liability back to the government, it seems like the only link there is that the government, in its capacity as an employer, transferred the husband. No. No. The government has done the transferring, and we're moving that aside for the moment. The claim now is made under New Jersey law that the government suddenly is aware of this problematic activity by both of these people, one of whom is a military person. And then the question is, why isn't the government as liable? Okay. I think I understand. Not reporting the spouse as to reporting, not reporting the colonel. So in your hypothetical, just to make sure I understand it, you're saying the transfer is done, and now the government somehow outside the capacity of its employer, just randomly, has learned that the spouse is engaging in abuse. In that circumstance, if the plaintiff's claim were simply a negligence per se, based on the failure to report in accordance with New Jersey law, we would agree that it's hard to invoke the Sheridan exception in that circumstance. The problem is that, I mean, putting aside that there are all these additional reasons why that hypothetical isn't this case, that's not the plaintiff's tort claim. They're not saying that it's negligence per se, or at least as I understand their tort claim now, they're not saying it's negligence per se, simply to have a failure to report. And if that was their tort claim, then the court could very easily resolve this case by the fact that New Jersey law clearly doesn't recognize such a claim. The problem is that if New Jersey law recognizes any sort of claim here, it's not just based on the failure to report, it's a totality of the circumstances that accounts for, among other things, the relationship of the parties and issues of social policy and that kind of complicated balancing. And that's what falls squarely into things like the discretionary function exception in Sheridan and this court's decision in CNA. If I could just very briefly talk about the discretionary function exception, I just want to make sure that the court understands that the argument that they raise in their reply brief about the Assimilative Crimes Act was something that they did not raise in their opening brief, and indeed their opening brief even said that it was, they conceded that it wasn't federal policy to have these things reported. And so just under general principles that this court has recognized, an argument raised only in the reply brief is waived. And indeed, we would suggest to this court that there are very good reasons to question the plaintiff's reliance on the Assimilative Crimes Act. One is that there are good reasons to think that this particular statute wouldn't be assimilated, and that's because you already have a federal reporting statute that applies on installations like military bases, and so the federal government has expressed its policy that certain kinds of people have a mandatory duty to report, but other people don't. And so there are good reasons to think that there's no gap for the ACA to fill. Furthermore, the Ninth Circuit held in a case called U.S. v. Blackburn, that even when the ACA incorporates state criminal law, that still doesn't vitiate the relevant discretion for FTCA purposes. And so I bring these holdings and these arguments to the court's attention, not because I think the court should resolve them in this case, but merely to illustrate that because the plaintiff only raised this in the reply brief, the government has been deprived of the opportunity to brief what we think are very substantial questions that we would want the court to hear from us if it were going to consider that kind of argument. Unless there are further questions, we'll rest on our briefs. Thank you. Thank you. Thank you, Your Honors. To address what Judge Pollack raised, the reason that he should consider the arguments that we raised on appeal is that the plaintiff would be deprived of any other forum. There is no other forum. But why he just said you wouldn't be? He said that you could bring these actions in the state. Against the colonel, but not against the government. So the only forum against the government would be if this court chooses to reinstate the complaint, absent a petition for certiorari. Judge Greenaway had asked previously about the Sheridan case, and here we argue that we fall within Sheridan, because there the naval personnel had seen that there was a weapon brandished and that there was a drunken sailor, and they chose not to do anything. That's similar to here, where we believe the government had knowledge that Colonel Palo Alto was a sexual predator, and rather than abiding by New Jersey's requirement that they make a report to the Division of Youth and Family Services, they just ignored it and transferred him to New Jersey so that he could just start afresh. Had there been a reporting, then the division would have launched an investigation, and at that point the colonel could have been aware, okay, I can't just start over like I did in Arkansas after I left Virginia. I actually probably shouldn't act in accordance with this because I'm now under the microscope. That didn't happen here. And as a result, our client was unfortunately assaulted. The Sheridan decision went on to say that this can't just be a happenstance of being on the federal payroll, and that's exactly what happened here, that the cause for liability against the government is not because Colonel Palo Alto was a colonel and acted, let's say, in some sort of military room and interrogating some terrorists. No, he was off duty. He was off base, and that's when this act occurred. The fact that he's on the payroll is just happenstance. However, the duty is triggered because the government has actual knowledge that he's committed a sexual abuse not once, not twice, but three prior times, and now he comes to New Jersey. He has his own son who's the same age as our client, and he used him. What's the relevance of that? You mentioned it before. Because the federal government knows that there's another child involved, and so they should have taken under the statute, the reason is to protect children. So if he has his own child, that child needs protection too. And under that basis, the cause for the statute has to be followed, that we need to protect this children and other children, and that's the reason for the requirement for the reporting. So your mention of his child is really just happenstance. I mean, you don't represent them. No, no. It's really just to illustrate the point that the reason underlying New Jersey's reporting statute exists here. It's not just some bachelor who doesn't have any children, and so there's no real reason to suspect this might occur again. Here, you know that there's a child here that you have to protect, and that would trigger the duty. So the government would have a duty to follow Palo Alto wherever he was reassigned. Right. Find out what's going on in that state and comply with whatever requirements that state has. Yes, because here, the transfer was as a result of these allegations that occurred in Arkansas and Virginia. When they came to light, he was then transferred to New Jersey. And as a result of that, they should have been more aware that there was a statute that they had to abide by to protect children in that state. Thank you. Thank you, Your Honors. Thank you both very much. Thank you.